MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

---

## STATE EX REL. CARROLL, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

### (No. 3,632.)

(Submitted February 17, 1915. Decided March 22, 1915.)

[147 Pac. 612.]

*Supervisory Control—Scope of Writ—District Courts—Departments—Jurisdiction—Habeas Corpus—Incompetent Persons—"Mentally Incompetent"—Definition.*

Habeas Corpus—Scope of Writ.
    1.   *Quaere:* Has the district court jurisdiction, in *habeas corpus* proceedings, to discharge from custody one held under guardianship as an incompetent person?

Supervising Control—Scope of Writ.
    2.   The writ of supervisory control issues only to correct rulings made by the district court acting within jurisdiction, where there is not an appeal or the remedy by appeal cannot afford adequate relief, and gross injustice is threatened as the result of such rulings.

District Courts—Departments—Jurisdiction.
    3.   The departments into which a district court may be divided are co-ordinate, neither possessing any appellate or supervisory control over the other.

Same.
    4.   Where restoration of an incompetent person to capacity had been denied by one department of a district court, it was improper for another department of the same court on *habeas corpus*, within two weeks thereafter and upon substantially the same state of facts, to order the discharge of such person from the custody of her guardian.

Incompetents—Guardians—Powers.
    5.   One having the guardianship of the estate of an incompetent must, under the Code provisions applicable, of necessity also be guardian of his person.

Same—"Mentally Incompetent"—Definition.
    6.   *Held*, that the words "mentally incompetent," as used in section 7764, Revised Codes, mean a person who, though not insane, is, by reason of old age, disease, weakness of mind or from any other cause, unable, without assistance, to properly manage and take care of himself and his property.

    [As to right to control action as between two courts of concurrent jurisdiction, see note in Ann. Cas. 1912A, 150. As to common-law powers of guardians, see note in 89 Am. St. Rep. 257.]

Original application for writ of supervisory control by the State, on the relation of Joseph J. Carroll, as guardian of Mary Murphy, an incompetent person, against the District Court of the First Judicial District in and for the County of Lewis and Clark and J. M. Clements, a judge thereof. Order annulled.

*Messrs. Galen & Mettler,* for Relator, submitted a brief, and argued the cause orally.

*Mr. Wellington D. Rankin,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By an order made and entered in department No. 2 of the district court of Lewis and Clark county, in June, 1912, Joseph J. Carroll was duly appointed guardian of the person and estate of Mary Murphy, an incompetent person. He immediately qualified and has since been in the active discharge of his duties. In January, 1915, Anna E. Nett, a daughter of Mrs. Murphy, petitioned the court to have her mother restored to capacity. A hearing was had in department No. 2, presided over by Hon. J. Miller Smith, with the result that the petition was denied; the court finding Mary Murphy still incompetent and incapable of caring for herself or her property. On January 18, Mrs. Nett applied to the court in department No. 1, before Hon. J. M. Clements, for the release of Mrs. Murphy on *habeas corpus* proceedings, alleging that she was illegally restrained of her liberty by Joseph J. Carroll, under the pretense that Mrs. Murphy is incompetent, whereas, it is alleged, she is competent and capable of caring for herself and her property. The writ was issued, and at the return time the guardian, in person and by counsel, represented that a formal return had not been prepared for lack of time and opportunity, whereupon by common consent the hearing proceeded upon the understanding that the return would seek to justify the guardian's action by reason of the guardianship. At the conclusion of the hearing the court

made an order for the temporary custody of Mrs. Murphy pending final determination of the matter. In making the order, it appeared that the court acted within jurisdiction, and we declined to interfere upon *certiorari* proceedings. Upon February 5, 1915, the court made and entered its final order, wherein are recited at great length the facts which the court deemed supported by the evidence. The conclusion, which is the formal part of the order, reads as follows: "It is. ordered that the prayer of the petitioner be granted, and that the person of Mary Murphy be released from the control and care of J. J. Carroll, and that she be permitted to go hence, whither she will, and that the expense of her living, such as she may see fit to enjoy, be a charge against her estate." The guardian then made this application for relief. An order *nisi* was issued, and upon the return the matter was argued and submitted upon a motion to quash.

We shall not stop to inquire whether the district court possesses the jurisdiction or authority, in *habeas corpus* proceedings, to discharge from custody one held under guardianship as an incompetent person. We shall assume that authority to do so, in a proper case, is lodged in that court. The writ of [2] supervisory control is issued only to correct rulings made by the lower court acting within jurisdiction, but erroneously, where there is not an appeal, or the remedy by appeal cannot afford adequate relief, and gross injustice is threatened as the result of such rulings. (*In re Weston,* 28 Mont. 207, 72 Pac. 512.)

In our opinion, the order now under review should not have been made for several reasons:

1. The district court in department No. 2, on January 15, 1915, after a hearing had for the express purpose of determining whether Mrs. Murphy was so far competent as to be able to care for herself and her property, decided that she was not, and that a guardian is still necessary. That adjudication should have [3] ended the matter, except for causes arising subsequently thereto. The two departments of the district court are co-

ordinate.    Neither possesses any appellate or supervisory control over the other, and when one has spoken upon a matter properly before it, a due sense of propriety alone ought to be sufficient to stay interference by the other.

2. When the application for restoration was denied in depart-[4] ment No. 2, Mrs. Nett was forbidden by statute (section 6324, Rev. Codes) the right to renew it before the other department, and yet, if this order now under review be permitted to stand, she will have accomplished by indirection the very thing she is forbidden to do directly.    This also ought to have been sufficient justification for the court in department No. 1 denying the relief sought.    The statutes are intended to be obeyed in spirit as well as in letter.    The evidence taken in department No. 1 was not so different from that considered in department No. 2 as to warrant a different conclusion.

3. In the beginning of the hearing in department No. 1, upon an objection by counsel for the guardian, the court in ruling said:

"Of course, I cannot inquire into the legality of his authority as guardian; but I do not know what the petitioner expects to show here in support of this petition.    It can only go that far, whether or not, as guardian of her person, he has gone so far with it as to amount to such detention as to deprive Mrs. Murphy of her personal liberty.    *    *    *    I will overrule the objection at the present, and will hear only the question as to whether or not the guardian has exceeded his authority as prescribed in the Code."    This declared intention to limit the investigation to a matter which would have been a perfectly proper subject of inquiry by a court having it regularly under consideration was apparently abandoned altogether, and the investigation made to compass the entire subject of the propriety or necessity of a guardian for Mrs. Murphy.    Taken in connection with the order itself, these considerations disclose an arbitrary and unwarranted exercise of power, the result of which, if unchallenged, will involve the guardian in legal difficulties of the most serious character.

4. While the order does not in terms discharge this relator as guardian of the person of Mary Murphy, it was evidently intended to do so in fact; for the enforcement of the order is absolutely incompatible with the discharge of the guardian's duties to his ward. Section 7766, Revised Codes, provides that every guardian appointed for an incompetent person "has the care and custody of the person of his ward, and the management of all his estate, until such guardian is legally discharged." This relator is still guardian of the person of Mary Murphy—nominally so, at least—charged by statute and the obligation of his bond to have her care and custody, and yet forbidden by this order, under the penalties which might be imposed in contempt proceedings, to exercise either care or custody of the person of [5] his ward. The court must have fallen into error in assuming that it is possible under our Codes to have a guardianship of the estate of an incompetent person without a guardianship of the person. While the person and estate of a minor are independent in guardianship matters, and the court may appoint a guardian for either the person or estate, or for both (section 7753), no such authority exists with respect to an incompetent person, and for the most obvious reason. Before a guardian can be appointed for an incompetent, the district court to which the application is addressed must, after a full hearing and examination, determine "that the person in question is incapable of taking care of himself and managing his property." (Section 7765.) It goes without saying that, if Mrs. Murphy is not an incompetent person, she should not be under guardianship at all; for there is not any other ground for interference by the court with her or her affairs. If she is incompetent, the necessity for a guardian of her person is equally as great as the necessity for a guardian of her estate. The order which in effect discharges the relator as guardian of the person of Mary Murphy, while leaving him guardian of her estate, is altogether unwarranted.

5. In the preamble to the order now under review, the court, in considering the circumstance that Mrs. Murphy is about 80 years old, said: "Even if this old lady's mental horizon was partially or

totally clouded, so long as she is not a maniac, an idiot, or insane, no reason exists why she should be deprived of the widest opportunity to enjoy all the blessings of this short life within her grasp and appreciation.'' If by this declaration it was meant that a guardian can be appointed only for an infant, a maniac, [6] an idiot or an insane person, the court was in error. Section 7764 deals with the guardianship of an insane person or a person who is mentally incompetent to manage his property. None of the terms ''maniac,'' ''idiot'' or ''insane'' can be used interchangeably with ''mentally incompetent.'' While a maniac, an idiot or an insane person is a mentally incompetent person, the reverse is not true at all. A person may be mentally incompetent within the meaning of sections 7764–7767, and yet be neither a maniac, an idiot, or an insane person. Section 4000, Compiled Laws of Utah of 1907, and section 1763, Code of Civil Procedure of California of 1897 are practically identical with our section 7764 above. Out of abundance of caution, the Utah and California statutes define ''mentally incompetent'' as follows: ''The phrases 'incompetent,' 'mentally incompetent,' and 'incapable,' as used in this title, shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness .of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.'' (Sec. 4001, Utah Comp. Laws; sec; 1767, Cal. Code Civ. Proc.) In our judgment, these statutes correctly define ''mentally incompetent,'' as used in our Code. (Sec. 7764, above; *In re Daniels,* 140 Cal. 335, 73 Pac. 1053; *Estate of Leonard,* 95 Mich. 295, 54 N. W. 1082; *Hayes* v. *Candee,* 75 Conn. 131, 52 Atl. 826.)

The motion to quash is overruled. The order of the district court, made and entered in the *habeas corpus* proceeding on February 5, 1915, is annulled.

*Order annulled.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.