STATE EX REL. KELLY, RELATRIX, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 5,717.)

(Submitted March 20, 1925.  Decided April 8, 1925.)

[235 Pac. 751.]

*Insane Persons—Guardians—Appointment—Hearing—Void Service of Notice—Certiorari—Estoppel by Pleading—Remedies—Equity.*

Insane Persons—Guardians—Appointment—Hearing—Service of Notice Essential.
1.   On petition for the appointment of a guardian for an insane person, service of notice of time and place of hearing as required by section 10412, Revised Codes of 1921, is essential to the validity of the order of appointment.

Same—Notice—Service as Citation—Service by Petitioner Void.
2.   The notice required by section 10412, *supra,* to be served upon a person sought to be placed under guardianship as an incompetent must be served as a citation, which in turn must be served as a summons; therefore, since a summons cannot be served by a party to the proceeding, service made by petitioner for letters of guardianship was void.

Same—Absence of Incompetent from State—Court Without Authority to Appoint Guardian.
3.   In the absence of an alleged incompetent from the state, the court is without authority to appoint a guardian for such person.

Same—Restoration to Capacity—Immaterial Allegations—*Certiorari*—Estoppel by Pleading.
4.   Upon the hearing of a petition for restoration to capacity the question whether the order declaring petitioner incompetent was correctly made is not a proper subject of inquiry; allegations as to its validity or invalidity are immaterial, and, therefore, since a pleader cannot be estopped by an immaterial averment, contention that by an allegation in the petition admitting the validity of the order and averring that it was in full force and effect petitioner was estopped on *certiorari* to attack the court's jurisdiction in making it has no merit.

Same—*Certiorari*—When Writ Does not Lie.
5.   Under the rule that where a judgment or order complained of on *certiorari* has passed beyond the stage of review the writ does not lie, *held* that where the district court had annulled its order appointing a guardian of an incompetent and restored her to capacity, the writ will not issue to review the propriety of making the order of appointment.

Same—Appointment of Guardian—Lack of Jurisdiction—Settlement of Guardian's Accounts—Equity.
6.   Where the district court sitting in probate was without jurisdiction to appoint a guardian for an alleged incompetent and

2.  Necessity of notice to lunatic of inquisition of lunacy, see notes in 10 Ann. Cas. 216; 23 L. R. A. 737; 26 L. R. A. (n. s.) 232.

therefore without authority thereafter to settle the guardian's account, the remedy of the parties for an adjustment of their rights lies with a court of equity.

Original application for writ of *certiorari* by the State, on the relation of Gina Kelly, against the District Court of the Fifteenth Judicial District in and for County of Rosebud and G. J. Jeffries, Judge thereof. Dismissed.

*Mr. F. F. Haynes,* for Relatrix, submitted a brief and argued the cause orally.

"Service of notice of the application for the appointment of a guardian upon the insane person * * * is jurisdictional and if no such notice was served all subsequent proceedings are null and void." (*Donaldson* v. *Winningham,* 48 Wash. 374, 125 Am. St. Rep. 937, 93 Pac. 534; *Mayer* v. *Rice,* 113 Wash. 144, 193 Pac. 723; *Martin* v. *White,* 146 Fed. 461, 76 C. C. A. 671; *Jones* v. *Learned,* 17 Colo. App. 76, 66 Pac. 1071; *Re Jacobson's Will,* 44 S. D. 409, 184 N. W. 237; *Jones* v. *Schaffner* (Iowa), 180 N. W. 672, 673.)

In a proceeding for the appointment of a guardian of the person of an incompetent, jurisdiction cannot be obtained by personal service outside the state. (*Grinbaum* v. *Superior Court,* 192 Cal. 566, 221 Pac. 651, 652; *Smith* v. *Grady,* 68 Wis. 215, 31 N. W. 477; *Mexican Cent. R. R. Co.* v. *Pinkney,* 149 U. S. 194, 37 L. Ed. 699, 13 Sup. Ct. Rep. 859 [see, also, Rose's U. S. Notes].)

Notice, assuming one was given, is nothing in the matter of acquiring jurisdiction unless an opportunity to be heard is given. Such a proceeding will prostitute the law into a vehicle for oppression and deny a cardinal postulate of constitutional government. (*State ex rel. Happel* v. *District Court,* 38 Mont. 166, 174, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098, 99 Pac. 291; *State ex rel. Carroll* v. *District Court,* 50 Mont. 428, 147 Pac. 612; *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. Ed. 914; *Harvey* v. *Elliott,* 167 U. S. 409, 417,

42 L. Ed. 215, 17 Sup. Ct. Rep. 841 [see, also, Rose's U. S. Notes].)

This court has held that the fact that a petition for restoration to capacity was pending did not deprive the party of the right to attack the validity of the appointment. This is conclusive upon the proposition. The court recognized the doctrine that the incompetent could not do anything before the actual restoration in the way of waiver or estoppel. The same rule would necessarily apply where the order of restoration was actually made. (*In re Kane's Estate,* 12 Mont. 197, 29 Pac. 424.)

*Mr. Geo. A. Horkan,* for respondents, submitted a brief and argued the cause orally.

Respondents contend that the order complained of and sought to be reviewed was annulled by the respondent court on September 19, 1924; that therefore there is nothing to review, nothing to annul and the relatrix is asking this court to do a useless thing. (4 Cal. Jur. 1064; 11 C. J. 186; *Lamb* v. *Schottler,* 54 Cal. 319, 322.)

Relatrix is guilty of laches and therefore the motion to quash should be sustained. "*Certiorari* will not lie where the petitioner has been guilty of laches or has not made application therefor in due season." (11 C. J. 130, 146; *Smith* v. *Superior Court,* 97 Cal. 348, 32 Pac. 322; *Keys* v. *Marin County,* 42 Cal. 252; *Reynolds* v. *Superior Court,* 64 Cal. 372, 28 Pac. 121; *Crosby* v. *Salt Lake Probate Court,* 3 Utah, 51, 5 Pac. 552.)

The order appointing the guardian of Gina Kelly is an appealable order. (Sec. 9731, Rev. Codes 1921; *In re Kane's Estate,* 12 Mont. 197, 29 Pac. 424.) "*Certiorari* will not lie to review a judgment after the expiration of the time limited for appeal, unless circumstances of an extraordinary character intervene." (*Smith* v. *Superior Court, supra.*)

The relatrix is estopped from attacking the order of respondent court to make the order appointing the guardian,

or the jurisdiction of the court to hear and pass upon a final report and account of Kelly. (10 R. C. L. 699; *Grinbaum* v. *Superior Court,* 192 Cal. 528, 221 Pac. 635, 647; *Loque* v. *Fenning,* 29 App. Cas. (D. C.) 519; *Dutcher* v. *Hill,* 29 Mo. 271, 77 Am. Dec. 572; *Coleman* v. *Farrar,* 112 Mo. 54, 20 S. W. 441; *Davis* v. *Wakelee,* 156 U. S. 680, 39 L. Ed. 578, 15 Sup. Ct. Rep. 555 [see, also, Rose's U. S. Notes].)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The petition for a writ of review and accompanying exhibits inform us that in October, 1918, by an order of the probate court of Ramsey county, Minnesota, Gina Kelly, relatrix here, was committed to the State Hospital for the Insane at St. Peter, Minnesota.

On the 8th of November, 1918, J. A. Kelly, describing himself as the former husband and "a close and near friend of Gina Kelly, late of Forsyth, Rosebud county, Montana," filed in the district court of Rosebud county a petition in which he alleged that Gina Kelly then had real and personal property in Forsyth of the value of $23,500, of which $17,500 was represented by a cashier's check drawn on a Forsyth bank; and that Gina Kelly was then insane and unable to take care of herself or to manage her property, being "in the St. Peters Hospital in St. Peter, Minnesota." The petition therefore prayed that he be appointed guardian of her person and estate.

The court, by an order dated November 7, 1918, directed that a hearing upon the petition be had on November 18, 1918, and that notice of the time and place of the hearing and of the nature of the petition be given to Gina Kelly not later than five days before the day appointed. Pursuant to the order, the clerk, on November 8, 1918, issued, "In the Matter of the Guardianship of Gina Kelly," a notice, not directed to anyone, in which it was stated, in substance, that J. A. Kelly's petition to be appointed guardian of the person and estate of Gina Kelly had been set for hearing "on the ——

day of November, 1918, at the courtroom of said court." The notice was signed by the clerk. The seal of the court was not affixed.

Upon the eighteenth day of November, 1918, J. A. Kelly, the petitioner, filed in the proceeding an affidavit which, omitting the formal parts, reads as follows:

"J. A. Kelly, being first duly sworn, deposes and says that he is of lawful age, that he received the within notice and served a copy of the same upon Gina Kelly together with a copy of the petition and order of this court by leaving the same with her at the St. Peters Hospital at St. Peter, Minn., on the 12th day of November, A. D. 1918."

Upon this record and evidence taken, the court appointed J. A. Kelly guardian of the person and estate of Gina Kelly.

On February 17, 1919, Mrs. Kelly was discharged from the Insane Asylum at St. Peter, but as she avers: "She was thereupon seized by the said J. A. Kelly, alleged guardian, and with the aid of attendants was forcibly taken to the vicinity of Milwaukee, Wisconsin, where she was maintained in custody in a private asylum until on or about the twenty-seventh day of March, 1924"; that then upon her alleged guardian's direction she was taken by force to Warm Springs, Montana, "where she was thrown into the Montana State Asylum for the Insane and forcibly confined therein until about the fifteenth day of July, 1924," when she was released from custody. She avers that from the time the alleged notice was served upon her in the asylum at St. Peter in November, 1918, until on or about the 15th of July, 1924, she was in continuous custody "without funds and powerless and helpless to exercise any legal rights which she may have had in the premises."

On the 9th of September, 1924, she filed in the district court of Rosebud county a petition for restoration to capacity in which she alleged herself to be of sound mind and competent. Notice of the hearing of her petition was given to her guardian

and afterward on September 19, 1924, the court made an order restoring her to capacity.

On February 24, 1925, Mr. Kelly as guardian filed in the district court what purports to be his final report and account in the matter of the guardianship of Gina Kelly, an incompetent person, in which he prayed that the account and report be allowed and that himself and bondsmen be discharged and exonerated from all liability in the premises.

The relatrix represents to this court that upon the face of the proceedings the district court was without jurisdiction to appoint Mr. Kelly guardian, that the purported appointment is null and void, and the district court is without jurisdiction to allow and settle the final report and account.

Upon the foregoing allegations, and others not necessary to set forth, a writ of review was issued by this court. Pursuant thereto the district court has certified to us all its proceedings in the guardianship matter. Respondents also have filed a motion to quash the writ.

1. The statement that the district court did not have juris-[1] diction to appoint J. A. Kelly guardian of the person and estate of Gina Kelly seems incontrovertible. Unquestionably the proceeding was sought to be grounded upon section 10412, Revised Codes of 1921, which is: ''When it is represented to the district court, or a judge thereof, upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, such court or judge must cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time so appointed; and such person, if able to attend, must be produced on the hearing.''

Service of notice of the time and place of hearing the case upon the supposed insane or incompetent person, as required by the statute, is essential to the validity of an order appointing the guardian. (*Grinbaum* v. *Superior Court,* 192 Cal.

528, 221 Pac. 635; *McGee* v. *Hayes,* 127 Cal. 336, 78 Am. St. Rep. 57, 59 Pac. 767.)

Without considering the sufficiency of the form of the notice [2] given Mrs. Kelly, or whether the notice contemplated by the statute must be given by citation (see secs. 10359, 10362, and 10363, Rev. Codes 1921, *Guardianship of Sullivan,* 143 Cal. 462, 77 Pac. 153, and *Estate of Espinosa,* 179 Cal. 189, 175 Pac. 896, in which cases the notice contemplated by the California section 1763 is referred to as a citation), we hold that it must be served in the manner prescribed for a citation. The notice is in the nature of a process. The appointment of a guardian for the person and estate of an insane or incompetent person serves to deprive that person, to some extent at least, of his liberty and the control of his property. The appointment of a guardian for an incompetent person is a judicial act of grave character. (*In re Kane's Estate,* 12 Mont. 197, 29 Pac. 424.) A citation, says the Code, must be served in the same manner as a summons in a civil action. (Sec. 10361.) A summons may be served by the sheriff of the county where the defendant is found, or by any other person over the age of eighteen, not a party to the action. (Sec. 9110, Rev. Codes 1921.) Mr. Kelly himself, the applicant for letters of guardianship, was a party to the proceeding. (*Guardianship of Sullivan, supra.*) The law did not permit him to serve the process upon Mrs. Kelly. A party to a suit cannot serve his own writ. (*Filkins* v. *O'Sullivan,* 79 Ill. 524; *Bush* v. *Meacham,* 53 Mich. 575, 19 N. W. 192; *Boykin* v. *Edwards,* 21 Ala. 261; *Dyson* v. *Baker,* 54 Miss. 24.) "The reason for this rule is, that·the party serving process should be a wholly disinterested person. (*Tallon* v. *Schempf,* 67 Ill. 472.)" (*People* v. *Feicke,* 252 Ill. 414, 96 N. E. 1052.)

Section 10412 refers to persons within the state. This is the statute referred to in *State ex rel. Carroll* v. *District Court,* 50 Mont. 428, 147 Pac. 612. That case has no application to the appointment of a guardian for a nonresident. Guardians for persons who reside without this state, but who have prop-

erty here are provided for in section 10444, Revised Codes of 1921. While the guardianship proceeding under consideration here was not based upon the latter section, if it had been the result would be the same. Whether the notice prescribed by the court would have satisfied the provisions of that section we need not stop to inquire; the petitioner could not have made a valid service of the notice in any event.

The court could not appoint a guardian of the person of [3] Gina Kelly, she being absent from the state. (*De La Montanya* v. *De La Montanya*, 112 Cal. 101, 53 Am. St. Rep. 165 32 L. R. A. 82, 44 Pac. 345; *Galpin* v. *Page*, 18 Wall. (U. S.) 350, 21 L. Ed. 959 [see, also, Rose's U. S. Notes]; *Silver Camp Min. Co.* v. *Dickert*, 31 Mont. 488, 3 Ann. Cas. 1000, 67 L. R. A. 940, 78 Pac. 967.)

2. Counsel for respondents does not attempt to maintain that the court had jurisdiction to make the order complained of, but he contends that by filing the petition for restoration to capacity, and particularly by reason of its form, she has estopped herself from questioning the court's jurisdiction. In that document she set forth that on the eighteenth day of November, 1918, she was declared by the court to be an incompetent person, and that such order has never been nullified or revoked and now exists; that her former husband was appointed the guardian of her person and property, and "that said order is now in full force and effect"; that "she is of sound mind and wholly sane and competent." She prayed the court for an order declaring "her sane and competent and restoring her to capacity, for an order discharging said guardian and ordering said guardian to account to the petitioner for all assets in his hands or disbursed or disposed of by him and to surrender all assets to the petitioner."

It is asserted that by filing the petition for restoration [4] relatrix not only admitted the validity of the order declaring her incompetent and appointing a guardian of the person and estate but alleged the order to be in full force

and effect, which amounts to an estoppel by pleading. It is true, but in a limited sense only, that a petition for restoration recognizes the validity of the original proceeding; it does so only as a basis for asking an order of restoration.

By an order of the court a guardian had been appointed; the person had assumed to be guardian pursuant to the order from the eighteenth day of November, 1918, until September 19, 1924, and he had been a guardian *de facto* at least. The statutory remedy to avoid the guardianship (sec. 10415) was available to the petitioner whether the order was valid or not. Under this statute a person who has been declared insane or incompetent may apply to the district court of the county in which he was declared insane to have his restoration to capacity judicially determined. The purpose of a petition for restoration is simply to have determined that the petitioner, once declared incompetent, is competent. Upon the hearing of the petition, whether the order which declared the petitioner incompetent was made properly or improperly, is not a proper subject of inquiry. (*Grinbaum* v. *Superior Court, supra.*) The question for determination is: Is the petitioner now competent? The petitioner may concede the correctness of the original order, refer to it as a pretended order, or attack it as made improvidently; it matters not. Allegations as to the validity or invalidity of the original order in the petition for restoration are wholly immaterial. That a pleader will not be estopped by an immaterial averment does not require the citation of authorities.

*Dutcher* v. *Hill,* 29 Mo. 271, 77 Am. Dec. 572, and *Logue* v. *Fenning,* 29 App. Cas. (D. C.) 519, cited by respondents, were decided upon facts widely differing from those in the case at bar, and in each the attack upon the original order was a collateral one. Neither case is authority upon the precise point we are now considering.

3. Respondents argue that the petitioner by praying that the guardian be ordered to account for all assets in his hands,

and having caused the court to make an order to that effect, may not now assert that the court did not have authority to make the order. The wording of the prayer does not bear out respondent's contention. Since relatrix is charged with inconsistency amounting to a *quasi* estoppel she is entitled to rely upon the tenor of her words. She did not pray that the guardian be required to account to the court, but "to the petitioner"—to her. If her theory is correct, he should not account to the court but to her. If he were guardian *de jure,* he should account to the court; if *de facto*—trustee *de son tort* —to her. It is true that the district court in pursuance of its probate jurisdiction did not have authority to order the guardian to account to the petitioner, but this does not alter the situation. She is not in anywise confounded by the prayer to her petition for restoration.

4. Conceding, then, that the court did not have jurisdiction **[5]** to make the order declaring relatrix an incompetent person and appointing J. A. Kelly her guardian, is she entitled to the relief asked for in this proceeding? The answer is in the negative. On September 19, 1924, the court determined "that the guardianship over the estate and person of Gina Kelly heretofore decreed by order in this court is hereby annulled and dissolved, and the petitioner, Gina Kelly, is hereby fully restored to capacity." There is not now any function for the writ of review in this proceeding. There is nothing to annul. Where the judgment or order complained of has passed beyond the stage of review, nothing is left to be done by *certiorari.* (4 Cal. Jur. 1064; 11 C. J. 186.)

5. From what has been said it appears the district court **[6]** sitting in probate has not jurisdiction to proceed further in this matter. It may not settle or allow the purported account. What remedy is available to the parties? In the absence of a settlement between them litigation is inevitable. A sufficient answer is that a court of equity, in the exercise

of its broad and beneficent powers, will be enabled to deal justly with the parties.

The proceeding is dismissed.

*Dismissed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.