STATE EX REL. HAYNES, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,811.)

(Submitted April 9, 1938. Decided May 7, 1938.)

[81 Pac. (2d) 422.]

*Mr. F. F. Haynes,* Relator, appearing *pro se,* submitted a brief and argued the cause orally.

*Mr. E. E. Fenton,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding on writ of review. On application of F. F. Haynes, made on his affidavit, this court directed the issuance of a writ of review, commanding the district court of Custer county to certify up a transcript of the record and proceedings in the matter of the estate and guardianship of Joseph Kesl, a mental incompetent. On the return day, the respondent court filed a written motion to quash the writ and, without waiver thereof, made proper return to the writ.

On February 24, 1938, Agnes DeSell, niece of Joseph Kesl, filed her written petition for the appointment of a guardian of the property and person of Kesl. It recited that he was an inhabitant of Custer county, owning real and personal property located in Rosebud county; that he was 95 years of age, mentally incompetent and insane, wholly unable to transact his ordinary business affairs or properly care for his property; that for some time he had been a patient in the Holy Rosary Hospital at Miles City; and that he was so enfeebled in mind and body that he could not sign his name by mark and was suffering from various specified delusions. The petition requested the appointment of E. E. Fenton, a lawyer, as the guardian of Kesl. A citation was issued pursuant to the order of the respondent court, commanding Kesl to appear on March 2 at an appointed hour and show cause why Fenton should not be appointed as guardian of his person and property. Copies of the petition and citation were served on Kesl by the sheriff of Custer county on the same day the petition was filed.

The matter was heard on March 2, the date set for hearing. One doctor, the niece and another testified. The court found all of the allegations of the petition to be true, that Kesl was

unable to be present at the hearing by reason of illness and physical disability, and granted the prayer of the petition. Fenton gave bond in accordance with the order of appointment, which was approved. Letters of guardianship were issued to him on the same day.

From the petition for the writ, these additional facts appear: That Kesl was a resident of Rosebud county for fifty years; that the niece, petitioner, over the protest of Kesl, had taken and placed him in a hospital in Miles City three weeks prior to the appointment of the guardian; that Kesl was not a resident or inhabitant of Custer county; that on August 2, 1937, an identical petition for the appointment of a guardian was filed in the district court of Rosebud county which, after hearing, was denied; and that relator represented Kesl. Later Kesl, in the presence of witnesses, delivered to relator money and personal property in trust to be applied to certain specified purposes, some of which the relator still retained. Relator was without notice of the proceedings in Custer county and not a party to them. It is alleged that, for certain grounds, the district court of Custer county was without jurisdiction to hear the petition or make any order in the proceeding.

In the case of *State ex rel. Johnston* v. *District Court,* 93 Mont. 439, 19 Pac. (2d) 220, we said: "This court has declared that there are three indispensable requisites to the granting of the writ [of review] : (1) Excess of jurisdiction in the court making the order complained of; (2) absence of the right of appeal; and (3) lack of any plain, speedy and adequate remedy other than the writ of certiorari (*State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395; *State ex rel. Davis* v. *District Court,* 29 Mont. 153, 74 Pac. 200), and, if a right of appeal exists, it need not be either speedy or adequate to bar the use of the writ. (*State ex rel. King* v. *District Court,* 24 Mont. 494, 62 Pac. 820.) "

It is contended that the district court of Custer county was without jurisdiction on two grounds: (1) That notice to Kesl, and to no others, when he was in the mental and physical condition which was found by the court to exist at the time of the

hearing, does not satisfy the due process of law clause of the state and federal Constitutions; and (2) that he was not a resident of Custer county.

Section 10412 of our Codes provides that upon the filing of a ██ petition by a relative or friend that a person is insane or mentally incompetent to manage his property, the court or judge must cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time appointed, and such person, if able to attend, must be produced at the hearing. The citation issued in this case and its service were in strict conformity with this statute. Hence, the argument on this point amounts to the assertion that this statute, when applied to a fact situation such as here, operates to deprive Kesl of his property without due process of law.

It may be stated as a general rule that notice must be given to the alleged incompetent of the proceeding to determine his mental condition for the purpose of taking charge of his person or property, or both. (*State ex rel. Kelly* v. *District Court,* 73 Mont. 84, 235 Pac. 751; note, 23 A. L. R. 594; see, also, *State ex rel. Thompson* v. *District Court,* 75 Mont. 147, 242 Pac. 959; *State ex rel. Happel* v. *District Court,* 38 Mont. 166, 99 Pac. 291, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098.)

The Supreme Court of the United States has said in the case of *Chaloner* v. *Sherman,* 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427: "Plaintiff was physically able to be present at this hearing. But he did not appear, did not send any one to represent him, nor ask for an adjournment. At the inquisition the commission and the jury, after hearing witnesses, concluded that his attendance was unnecessary and did not require him to attend. There was evidence that his enforced attendance would be detrimental to his mental health. As the plaintiff had notice and opportunity to be heard at each stage of these proceedings the essential elements of due process of law were fully met, and the court had jurisdiction to enter that order. It is not open to collateral attack, although plaintiff was then under commitment

at Bloomingdale. (See *Simon* v. *Craft*, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165.)"

In the case of *Kutzner* v. *Meyers*, 182 Ind. 669, 108 N. E. 115, Ann. Cas. 1917A, 872, the court, under a similar statute, said: "The first objection which we shall notice is the one by which appellant assails the validity of the statute under which the proceeding is brought, upon the ground that it violates Article 1 of the 14th Amendment to the Federal Constitution, and also section 21, Art. I of the Constitution of this state. It is contended that the statute provides a means by which old persons can be deprived of liberty and property without due process of law, and that it denies to such persons the equal protection of the law. The statute in question makes provision for due process of law. It provides that notice of the proceeding shall be given to the person whose rights are to be affected thereby and that the issues shall be tried and determined by a legally constituted tribunal. This constitutes due process of law within the meaning of the Fourteenth Amendment to the federal Constitution."

The due process clause does not demand that the parent having custody or control of a child be served with notice where a guardian is sought only of the property of a minor. (*Jones* v. *Prairie Oil & Gas Co.*, 273 U. S. 195, 47 Sup. Ct. 338, 71 L. Ed. 602.) The court, in the case just cited, said: "It is admitted that Minerva Ingram was the mother of the minor, and the record indicates that the latter was of tender years, or at least under twelve, which is not denied. The mother seems to have had him in her custody. The Oklahoma statutes only require such notice as the judge deems reasonable to be given to the relatives residing in the county and to any person having the care of such minor. (Compiled Oklahoma Statutes, 1921, sec. 1431.) In the circumstances stated, unqualified, the requirement of notice is merely formal, if it exists. (*Lester* v. *Smith*, 83 Okl. 143 [200 Pac. 780] ; *Appeal of Gibson*, 154 Mass. 378, 379–381, 28 N. E. 296.) Certainly there is nothing in the Constitution of the United States that requires it." Our stat-

ute, therefore, meets the requirements of the due process of law clause of our state and the federal Constitution.

It is argued that under other statutes it is essential to the ██ jurisdiction of the court, in a proceeding such as here under consideration, that a guardian *ad litem* be appointed to represent the alleged insane person at the hearing on the petition. The statutes relied upon are sections 5687, 10401, 9071 and 10365. Even if a construction of these statutes were adopted in accord with the contention of counsel, a judgment rendered against an infant without the appointment of a guardian *ad litem,* while it may be erroneous, subject to reversal on appeal or amenable to a direct attack, is not void nor subject to collateral attack. (31 C. J. 1121; 15 R. C. L. 280; *Polk* v. *Chase Nat. Co.,* 120 Fla. 243, 162 So. 521.) A judgment against an incompetent at the time of its rendition and not represented by a guardian is not absolutely void, but is at most merely voidable and will be sustained when collaterally attacked. (14 R. C. L. 615; note, 34 A. L. R. 221.) Equity will in many instances relieve the insane person from the effect of a judgment which has been obtained against him (14 R. C. L. 615; note, 34 A. L. R. 223 et seq.); however a writ of review is generally considered as a direct attack. (1 Freeman on Judgments, 612, 5th ed.)

Since service of the petition and citation upon the alleged insane person satisfies the due process clause of our Constitutions, the court had jurisdiction, and if we assume that the trial court should have, under our statutory provisions, appointed a guardian *ad litem,* its failure so to do was an error within jurisdiction. When the court has jurisdiction it has the power to decide wrong as well as right. (*State ex rel. Cook* v. *District Court,* 105 Mont. 72, 69 Pac. (2d) 746.) The writ of review does not lie to correct such errors. (*State ex rel. Tague* v. *District Court,* 100 Mont. 383, 47 Pac. (2d) 649.)

It is contended by relator that only the district court of the █ county where the alleged incompetent resides has jurisdiction to appoint a guardian for such person. Our sections of

the Code (10412, 10413), relating to the manner of appointing guardians for incompetents, are silent as to in what particular district court the petition shall be filed. Section 10401, relating to the appointment of guardians for minors, provides for the hearing of the petition in the court of the county in which the minor is a resident or inhabitant. Section 10018 provides the courts of the counties where probate proceedings must be conducted. Sections 9093 to 9104 provide the place of trial of civil actions.

Under a similar condition of the statutory law, the supreme court of Kansas, in *Connell* v. *Moore,* 70 Kan. 88, 78 Pac. 164, 109 Am. St. Rep. 408, held that a guardian could only be appointed by the court of the domicile of the ward. It held it was the policy of the law, as declared by the legislature, to give to individuals a nearby convenient court, and limited the jurisdiction of courts in order to attain this end. The weakness in this theory as applied to our statutes is that the place of trial of civil actions as declared by our Codes, is not one limiting the jurisdiction of courts, but according a privilege. The rights given by these statutes may be waived. (Sec. 9097, Rev. Codes; *O'Hanion* v. *Great Northern Ry. Co.,* 76 Mont. 128, 245 Pac. 518.) In other words, our legislature has declared one rule as to civil actions, and another in the case of probate proceedings. As to the latter, they must be conducted in a certain specified county or counties.

The California court has, under a similar statutory condition as our own, arrived at the opposite conclusion from that of the Kansas court. (*Engelhart* v. *Superior Court,* 93 Cal. App. 320, 269 Pac. 758.) Our legislature has demonstrated by an examination of these statutes that it is able, when it so desires, to limit the jurisdiction of courts. We are commanded by section 10519, in construing statutes, to declare what is in terms or in substance contained therein, and not to insert what has been omitted. For us to adopt a construction in accordance with the contention of relator, we would of necessity have to include by implication words limiting the jurisdiction

of the court to the county of the residence of the alleged incompetent. These words were omitted and we may not insert them.

The motion to quash is sustained and the proceeding dismissed.

Associate Justices Stewart, Morris and Angstman concur.

Mr. Chief Justice Sands, Dissenting:

The question involved in this case is: Did the district court of Custer county exceed its jurisdiction in appointing E. E. Fenton as guardian of the person and estate of Joseph Kesl, a mental incompetent?

The facts surrounding the guardianship appointment are well and fully stated in the majority opinion.

Notice of the hearing on the application for letters of guardianship was served upon Kesl, who was then admittedly mentally incompetent. Relator, who was in possession of Kesl's property as trustee, was not served with citation and knew nothing of the proceedings.

I am unable to agree that the citation served upon Joseph Kesl was sufficiently worded to impart notice to him of the guardianship hearing. The citation reads as follows: ''You are hereby cited to be and appear before this court, at the court room thereof, in the court house, in the city of Miles City, County of Custer, State of Montana, on the 2nd day of March A. D. 1938, at the hour of 10:30 o'clock A. M. of said day, then and there to show cause, if any you have, why E. E. Fenton should not be appointed as the guardian of your person and estate, as prayed for in the petition of Agnes DeSell on file herein, a copy of which is herewith served upon you.''

The American system of law has always guaranteed that personal and property rights of the American people shall not be interfered with without the opportunity of a full and complete hearing. Such rights and such guaranties must be preserved to the letter, lest we gradually fall into the identical circumstances as are people of other nations, where daily decrees and edicts confiscate property at will and imprison hapless people without reason.

"Notice" is defined by statute. Section 8780, Revised Codes, reads: "Notice is: 1. Actual—which consists in express information of a fact. 2. Constructive—which is imputed by law." Section 8781 reads: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself, in all cases in which, by prosecuting such inquiry, he might have learned such facts."

Applying the latter section to the notice in this case, I express my grave doubts whether the notice was "sufficient to put a prudent man upon inquiry," as to what was being attempted by the applicant for letters of guardianship. Therefore, if there is a doubt as to the sufficiency of a notice of hearing on any such matter, I believe that it is the duty of this court to see to it that a proper and sufficient notice is given. However, section 10412 requires a personal notice to be served upon the alleged incompetent. This section does not set out the mode of giving the notice. In such a case section 10362 must apply; this section is as follows: "When personal notice is required, and no mode of giving it is prescribed, it must be given by citation." What must be contained in a citation of this nature is set forth in section 10359: "Citation must be directed to the person to be cited, signed by the clerk and issued under the seal of the court, and must contain: 1. The title of the proceeding: 2. The style of the citation, which shall be 'The State of Montana;' 3. A brief statement of the nature of the proceeding; 4. A direction that the person cited do appear at a time and place specified." This section has been held to apply to guardianship proceedings. (See *State ex rel. Kelly* v. *District Court*, 73 Mont. 84, 90, 235 Pac. 751.) As this section demands, this citation should have stated the full purpose of the hearing.

The notice here is deficient for the reason that it does not state the full purpose of the guardianship hearing. Before a guardian may be appointed to care for the person and estate of an incompetent, there must be a hearing and determination that the person is in fact incompetent. (*State ex rel. Carroll* v. *District Court*, 50 Mont. 428, 432, 147 Pac. 612.) In the case

just cited this court said: ''Before a guardian can be appointed for an incompetent, the district court to which the application is addressed must, after a full hearing and examination, determine 'that the person in question is incapable of taking care of himself and managing his property.' ''

The citation served upon Joseph Kesl nowhere stated that there was to be a hearing to determine his ''incompetency'' which is necessary before a guardian can be appointed. The notice of hearing being deficient in this most important particular, it is my conviction that the entire proceedings in the court below are void and should be set aside.