that the remark was objectionable, and the court thereupon emphasized what the district attorney had said by stating that the defendant had an objection and exception.    We think that this was prejudicial to the defendant.

3. After the jury had been out all night and unable to agree further, instructions were given them.    While the presiding judge was careful to say to the jury in the beginning that he did not desire to influence the individual opinion of any juror, we fear what was said later on did have precisely that effect.    After calling the attention of the jury to the fact that the case had been tried once before, that two witnesses were in custody, that the jury had probably gotten all the light that could be given to any jury, and that if the defendant was innocent he ought to go free, the judge said:

"Next to not having any courts at all, in time, it would be almost equally subversive of the administration of justice if time after time juries will not agree.    The occasional disagreement, that is nothing.    That is an incident to the system.    But, if we cannot get agreements in Onondaga county, it certainly does very much to cause unrest in the administration of the law.    Now, with these suggestions, gentlemen, you may retire."

The jury may well have received the impression from these remarks that a failure upon their part to agree upon a verdict was a reflection both upon their intelligence and their integrity, and we cannot say that the case was so plain against the defendant that he was not prejudiced thereby.    We think that under the circumstances of this case the errors to which we have called attention require the granting of a new trial.

The judgment of conviction, and the order denying the motion for a new trial, should therefore be reversed, and a new trial granted.    All concur, except ROBSON, J., who dissents.

(118 App. Div. 567)

FRICANO v. COLUMBIA NAT. BANK OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.    March 6, 1907.)

BANKS—PAYMENT OF CHECKS—LIABILITY TO DEPOSITOR.

The obligation of a bank to keep money for, and repay it to, the depositor, is that of a debtor, and where a bank paid a deposit to the son of the person in whose name it was made, it was liable to the father therefor, in the absence of the father's holding out the son, or permitting him to act, in such a manner as to justify the bank in paying checks drawn by the son in the father's name.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, §§ 398–405.]

Appeal from Trial Term, Erie County.

Action by Mariano Fricano against the Columbia National Bank of Buffalo.    From a judgment for defendant, and an order denying motion for a new trial, plaintiff appeals.    Reversed, and new trial granted.

The action was brought to recover the amount of a deposit claimed to have been made by the plaintiff in the defendant's bank at various times between the 13th day of January, 1903, and the 8th day of August, 1904, upon which the plaintiff alleged there was due and unpaid to him a balance of $830.    The defendant denied (1) that the plaintiff was

the real person who opened the account with him; and (2) claimed that the account had been paid in full. .

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Eugene M. Bartlet and Horace O. Lanza, for appellant.
John Cunneen, for respondent.

KRUSE, J.   While the jury were well warranted in finding a verdict of no cause of action in this case, we think the rule of law by which the jury were instructed to determine the defendant's liability was incorrect.   The controversy was over the right of the plaintiff's son to draw against the moneys deposited in the plaintiff's name, and to charge the same against that account.   It was claimed by the defendant that, although the deposit was made in the name of the plaintiff when the account was opened, the moneys were actually deposited and the business done with the son, who afterwards drew the checks in the name of his father, and that the son actually presented with the deposit the identification card bearing the name which the son afterwards used in drawing the checks upon the bank, and which the bank honored and paid; that even if the money belonged to the father, and even if the father was present when the deposit was made by the son, the father, by permitting the son to do what he did, although he assumed to and did use the name of the father, may not now question, as against the bank, the right of the son to receive payment of the moneys so deposited.   The plaintiff contends that, while the son was with him when the account was opened, he himself made the deposit, wrote his own name upon the identification card, and that neither he nor his son were guilty of any imposition or fraud upon the bank, nor was the conduct of either such as to mislead the bank officers. While the evidence was entirely sufficient to sustain the defendant's contention in that regard, we think the Trial Court inadvertently misstated the rule of law applicable to the case.   The court charged the jury that the defendant was bound to use that degree of care which an ordinarily prudent banker would have used under the same circumstances to protect the true owner of the account in question from loss, and to safely keep and pay over the same on demand.   That if the plaintiff did write his name on the signature card at the time of opening the account, and the cashier failed to exercise that degree of care which an ordinarily prudent cashier of a bank would have exercised under the same circumstances to ascertain the identity of the actual author of the signature, and, in consequence of that failure, the plaintiff has lost anything, the verdict should be for the plaintiff for the amount of the loss.   He also charged, in substance, that if the plaintiff in fact did own the moneys, and did write his name on the identification card, and if the defendant's cashier exercised such care as has been stated to ascertain and identify the actual owner of the money and the true author of the signature, and by the exercise of such care and prudence was unable to ascertain that the plaintiff was such owner and author, and if the son procured the signature of the plaintiff on the signature card and delivered it to the cashier and represented that it was the genuine signature, and the cashier was ignorant of the

matter, and in the exercise of due care believed and relied on the statements and representations, and if for these reasons the defendant's officers were without knowledge or information as to the true owner of the account and the real author of the signature until after the account was closed, and if during the time the accounts stood open on the defendant's books its officers and employés exercised the degree of care which they were bound to use to protect the plaintiff from loss, and finally paid it over on a check signed by the son Frank in the belief that he was the true owner, then your verdict must be for the defendant of no cause of action.

The defendant excepted to the part of the charge in which the duty of the bank to the depositor is measured by reasonable care. We think the exception was well taken. The liability of the bank to its depositors does not depend alone upon the exercise of reasonable care by the bank to ascertain the identity of the depositor. Nor is its obligation to keep or repay the fund that of reasonable care only. Very likely what the learned trial judge had in mind was the rule applicable to savings banks, where usually rules of that character govern. Allen v. Williamsburgh Savings Bank, 69 N. Y. 314; Kelly v. Buffalo Savings Bank, 180 N. Y. 171, 178, 72 N. E. 995, 69 L. R. A. 317, 105 Am. St. Rep. 720. Ordinarily, however, the relation of banker and depositor is that of debtor and creditor; as soon as the deposit is received it becomes the money of the bank, and the bank a debtor to the depositor for that amount. It is in no sense a trustee, and the rule of reasonable care has no application in respect of moneys so received by the bank. It is bound absolutely to pay or discharge the liability like any other obligation it owes. Ætna National Bank v. Fourth National Bank of the City of New York, 46 N. Y. 82, 7 Am. Rep. 314. We do not hold that the plaintiff may not have held out his son or permitted his son to act in such a manner as to warrant the cashier in relying thereon, and entirely justify the bank in paying the checks drawn by the son in the name of the father. The rule is well settled that an owner of property may hold out another, or allow such other person to appear, as the owner thereof in such a way that innocent third parties dealing with the apparent owner will be protected (McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341), on the familiar principle that when two innocent persons must suffer by the act of a third he who has enabled such third person to occasion the loss must bear it. This element, however, was not embodied in the charge. Carefulness or good faith alone upon the part of the cashier, without submitting the conduct of the plaintiff in connection therewith, was insufficient to warrant the bank in paying the son, so as to exonerate itself from liability against the claim of the father.

We conclude, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.