---

(159 App. Div. 46.)

## In re NASH.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1913.)

1. INSANE PERSONS (§ 45*)—GUARDIAN—LIABILITY OF SURETIES—MISMANAGEMENT OF ESTATE.

   The committee of an incompetent was not authorized to use the incompetent's money in its own business by depositing it in a private bank conducted by himself and another, and his sureties are liable therefor where he did so and afterwards became insolvent.

   [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

2. INSANE PERSONS (§ 45*)—GUARDIAN—LIABILITY OF SURETY.

   Neither the committee of an incompetent nor his surety can escape liability for money belonging to the incompetent, which was improperly invested by the committee, on the ground of the latter's subsequent bankruptcy.

   [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

3. BANKS AND BANKING (§ 130*)—DEPOSITS—NATURE.

   A deposit by a committee of an incompetent of the ward's money in a private bank conducted by the committee and another was not a bailment but rather a call loan; the depositor being a mere creditor.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. § 130.*]

4. INSANE PERSONS (§ 45*)—PROPERTY—SURETIES—BOND OF GUARDIAN—LIABILITY.

   The surety of a committee of an incompetent, who wrongfully deposited his ward's money in his own bank which became insolvent, cannot be re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lieved from liability for certain of the funds deposited on the ground that they did not belong to the ward individually but were held by him as executor, where decedent who appointed the ward executor devised all of her property to him and his two sisters, one of whom died intestate leaving him and the other sister her sole heirs, after which the other sister died without any debts, leaving a will giving all of her property to the ward, since both the legal title and beneficial interest in the property vested in the ward under the circumstances, notwithstanding the fact that the proceeds of the property derived from the sisters' estates were deposited in the committee's bank to the account of the ward's name as "Ex'r," and the ward had never made a judicial settlement of the estates.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 72; Dec. Dig. § 45.*]

Robson, J., dissenting.

Appeal from Genesee County Court.

In the matter of Homer D. Nash, an incompetent person. From a final order made upon an accounting by the committee, the incompetent, by special guardian, appeals. Reversed, and new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

E. A. Marsh, of Rochester, for appellant.
George P. Keating, of Buffalo, for respondent.

KRUSE, P. J. This controversy is over two items of the account of John H. Ward, the former committee of the person and property of Homer D. Nash, an incompetent person, one of $2,643.63 and another of $6,468.18. These two items represent deposits made in the Farmers' Bank of Batavia. The bank failed, and the special guardian of the incompetent person insists that the loss be borne by the committee and seeks to hold liable therefor the United States Fidelity & Guaranty Company of Baltimore, Md., his surety. The Farmers' Bank of Batavia was a private bank, not incorporated, was not under the supervision of the Banking Department, and made no reports to that department. It was a copartnership, composed of Salina A. Doty of Buffalo, N. Y., and John H. Ward, the committee. Ward was a resident of Batavia, had charge of the bank, and directed its entire business. He was the sole active manager of the bank down to the time of its failure, which occurred in February, 1911; Doty and Ward being adjudged bankrupts February 27, 1911, and all of their assets, including the funds in the bank, were turned over to their trustee in bankruptcy. At the time of the failure of the bank there was on deposit therein to the credit of Ward, as committee of Homer D. Nash, $2,643.63 in one account and $6,468.18 in another account; the larger item being designated as the "H. D. Nash, Ex'r," account. The larger item came from the estate of Eliza Ricky, a sister of the incompetent person. She died August 5, 1880, leaving all of her property by will to her brother and her two unmarried sisters, Jane E. Nash and Julia A. Nash, and made her brother the executor of her will. Jane died, leaving as her next of kin her brother, the incompetent person, and

her sister, Julia. Then Julia died at some time prior to November 21, 1901, leaving a will by which she left all her property to her brother, the incompetent, naming him executor thereof. There never was any judicial settlement of either estate, but the committee appointed to succeed Mr. Ward (who had been familiar with the affairs of the Nash family for many years and had the custody and had examined the papers pertaining to their affairs) testified that he found no bills or claims against any of the estates; and, so far as appears, there is none, nor is there any proof that Jane left any will.

Up to January 7, 1896, the executor's account was with the Monroe County Savings Bank. On that day Homer Nash, executor of Mrs. Ricky's will, drew a draft upon the Savings Bank payable to the order of Ward, as cashier, for $6,389.89, transferring the fund to the Farmers' Bank, where it was credited upon the books of the bank to "Homer D. Nash, Ex'r." Two or three years after the deposit, it was for a short time placed to the credit of Homer D. Nash individually, but the account was again changed to the account of "Homer D. Nash, Ex'r," and so remained practically all the time until Ward was appointed the committee in November, 1908, varying only slightly.

Homer D. Nash had done business with the Farmers' Bank for a long time, and when he was adjudged incompetent he had on deposit there the sum of $9,615.10, of which $3,369.67 was in his individual name and $6,245.43 to the credit of "Homer D. Nash, Ex'r." Upon Ward qualifying as trustee, he transferred both deposits to himself as committee. The executor's account remained undisturbed, except that interest was added during his incumbency; but the other account fluctuated, and both accounts were included in the inventory and his annual accounts as committee, filed in the county clerk's office.

Since the adjudication in bankruptcy of Doty and Ward, two dividends of 12½ per cent. each have been declared; the first dividend, amounting to $1,174.54, being paid to Ward before his removal from office as committee, and by him turned over to his successors. The other has not yet been claimed by the committee.

There is no evidence as to whether the financial disaster which overtook Doty and Ward was sudden and unexpected or otherwise. The bare fact appears that at the time stated the bank failed and Doty and Ward were declared bankrupts. But, in the view which I entertain, perhaps it is not very important.

[1] I think the committee was not authorized to use these moneys in his own business, and, having done so, the sureties are liable therefor. The use of trust funds, even when loaned by a committee to others in the prosecution of mercantile, commercial, or speculative adventures, has been uniformly condemned. Matter of Myers, 131 N. Y. 409, 415, 30 N. E. 135. The mere fact that the committee had a partner and that the business was banking does not, I think, save the surety from liability. Had the committee deposited in another bank, not his own, such funds as were needed to meet recurring demands, from time to time, acting in good faith and with due care, and then a loss occurred through the insolvency of the bank, a different question would be presented; but that is not this case.

The case of People ex rel. Nash v. Faulkner, 107 N. Y. 477, 14 N. E. 415, is relied upon to justify the deposit in this bank. It there appeared that certain funds were held by the surrogate pending proceedings to determine the parties entitled thereto; that he deposited the funds, in good faith, with a private bank in good standing and credit, doing a general banking business, and before the proceedings were terminated the banker failed, and it was held that the sureties on the surrogate's official bond were not liable for the loss. But it further appeared that the surrogate was not interested in the bank in any way; and that decision was distinguished in a later case in the Court of Appeals (Bruen v. Gillet, 115 N. Y. 10, 18, 21 N. E. 676, 678 [4 L. R. A. 529, 12 Am. St. Rep. 764]); the court saying:

"It is clear that in the Faulkner Case, supra, if the surrogate had also been a private banker, he would have been liable for the loss of the funds if he had deposited them in his own private bank to his credit as surrogate or to the credit of the estate to which they belonged. There would have been no change of liability in such a case, because there would have been no change of possession, for the moneys would have been in his possession just the same after the deposit as they were before."

[2, 3] While Nash himself opened these accounts before he was declared incompetent, and might perhaps have continued to keep the accounts in this bank until it failed, that affords no grounds for exonerating the committee or his surety for the failure to pay over the moneys. Neither he nor his surety can escape liability because of his subsequent bankruptcy. Of course these deposits were in no sense bailments but rather in the nature of a call loan, the depositor being a mere creditor (Fricano v. Columbia National Bank, 118 App. Div. 567, 103 N. Y. Supp. 189); but presumably the committee was solvent and so remained for some time after he was appointed. It was his duty to make investments as the law requires and keep safely what was not so invested.

It is contended by the surety company that in no event is it liable for this larger item, called the executor's account, because the moneys represented thereby did not belong to the incompetent individually but were held by him in a representative capacity. In support of his contention the learned counsel for the respondent cites the case of Johnson v. Ayres, 18 App. Div. 495, 46 N. Y. Supp. 132, where it was held that sureties upon the bond of the committee of the incompetent were only liable for such moneys as legally came into the hands of the committee.

[4] I think the respondent's difficulty is not so much with the law as with the facts. If there are no outstanding claims against the estates of his sisters, as the proof tends to show, the funds represented by the executor's account actually belonged to the incompetent, because upon the death of his sisters he succeeded to their interests; Julia having willed all her property to him and he was the sole next of kin of Jane, who seems to have died intestate, at least there is no evidence that there was ever any will found. Under these circumstances Nash succeeded to the entire beneficial interest in the fund, and the legal title became vested in him. Blood v. Kane, 130 N. Y. 514, 29 N. E. 994, 15 L. R. A. 490.

The final order, so far as appealed from, should therefore be reversed, and a new trial ordered. All concur, except ROBSON, J., who dissents.