MARY MOLLIE PIERRE BRAVE BULL and Claude Brave Bull and E. D. Mossman, Respondents, v. W. H. ORDWAY, Appellant.

(221 N. W. 780.)

Opinion filed July 22, 1928.   Rehearing denied November 21, 1928.

*Kelsch & Higgins,* for appellant.

*Morrison & Skaug,* for respondents.

Burr, J.   Mary Millie Pierre Brave Bull is an Indian woman, sixty years of age, and with an estate consisting of $8,194.98 cash obtained from the United States.   During all of the time involved in this case she was a resident of Sioux county and in 1923 the county court of Sioux county, having duly adjudicated her an incompetent person, appointed the defendant guardian of her estate.   The defendant qualified as such guardian and entered upon his duties.   During 1923-24, one Chas. S. Pulling was the judge of the county court of Sioux county who made these orders, and the owner of the real property involved, described as lot 12, block 13, town of Ft. Yates in Sioux county.   This property had a dwelling house situated thereon, and in December 1924 the defendant invested $3,000 of his ward's money by purchasing this dwelling house from the county judge.   The guardian made no annual report to the county court as to his management of the estate during the years 1923 to 1925 inclusive and on January 5th, 1926, the husband of the ward petitioned the county court of Sioux county for a citation requiring the guardian to appear and render an account.   By this time, Judge Pulling had ceased to be county judge.   At the time of the filing of the petition the county court issued a citation requiring the guardian to appear and render his account.   On February 8, 1926, the guardian filed his report wherein he showed, among other items, that he had purchased this Pulling residence for $3,000.   The court set March 3, 1926, as the date for the hearing of the account and on the date set the guardian appeared and filed a supplemental report in which the following item appears:

"Dec. 20, 1924, Paid for residence property, lot 12, block 13, Ft. Yates, $3,000.   Warranty Deed held to lot 12, block 13, Ft. Yates, valued at $3,000."

In connection with this latter report the guardian filed what he termed the ward's request as follows:

"Cannon Ball, N. D., Aug. 20, 1924.

"I hereby authorize W. H. Ordway, my guardian, to purchase the Chas. S. Pulling house and lot in Ft. Yates, N. Dak., for a consideration of three thousand dollars ($3,000.00), to be paid for in cash from funds on hand, or whenever available from my estate.

"Witness                                    [Signed]  (Thumb Print)"
"Moses Tickasin.

This request was signed by the ward with her thumb mark and there was also filed with this report a purported order of one Adam Thomas, "judge of the county court Emmons county, North Dakota and acting judge county court Sioux county, North Dakota," authorizing the guardian to purchase this property for $3,000. This order though dated September 20, 1924, was not filed in the county court until March 3, 1927, when the defendant filed it in connection with his supplemental report. At the hearing the county court rejected and disallowed this item, and made an order requiring the guardian to account for the $3,000 so expended together with interest at six per cent per annum "from the time of the alleged investment of such funds in said residence property up to the time when the same is turned over and accounted for," and further ordered that the ward "execute and deposit in this court a quitclaim deed conveying any interest or title which she may have" in and to the residence property. The remainder of the account as filed by the guardian was allowed. The ward executed and deposited the quitclaim deed as required.

The defendant appealed to the district court, basing his appeal on the contention that the county court "had no jurisdiction of the subject-matter in this proceeding and had no power or authority to reject or disallow the item of money expended in the purchase of the residence;" that the county court "had no jurisdiction over the person of the respondent or his ward;" that the order of Judge Thomas was a valid order made and entered September 20, 1924; that no appeal had been taken therefrom and therefore it became "final and conclusive against mere collateral attack;" that the court had "no jurisdiction to nullify said order except by direct proceeding;" and that the ward

had full knowledge of the purported investment and could not disaffirm the same without giving legal notice of the act with an offer to tender and restore the property together with the rents and profits. The district court sustained the action of the county court and on June 13, 1927, made and filed an order dismissing the appeal of the defendant. Before the record was returned to the county court, and on July 29, 1927, the district court made and filed findings of fact and conclusions of law and order of judgment. These findings show the appointment of the defendant as guardian; his qualification; his taking possession of the property of his ward; his failure to file any report until required to do so by order of the county court; objections taken to this report; that the defendant had used a portion of his ward's money to buy the residence of the county judge; that no notice of any hearing was ever given to the said ward or to any person interested in the estate of said ward of any application or petition for any order authorizing the investment of the funds of the said ward in the said real estate and that no hearing was ever had upon any application or petition for said order; that no order was ever made or entered transferring the said matter to the county court of Emmons county or to the said Adam Thomas as county judge of Emmons county nor was the said Adam Thomas ever requested by the county judge of Sioux county, North Dakota, to come to Sioux county and preside at any hearing upon any application for the said purported order and that the said Adam Thomas never appeared in Sioux county in an official capacity for any action upon the matters involved in said purported order."

The findings also show there was no necessity for the purchase of such residence, that the ward did not need it, and that the purchase had never been approved by the county court. From the judgment of the district court entered on such findings the defendant appeals and demands a trial de novo.

The defendant states the district court erred in dismissing his appeal in the county court; in finding the order of Judge Thomas to be a "purported order;" in confirming the order and action of the county court; in making findings of fact and conclusions of law after having signed an order dismissing the appeal.

The defendant alleges that he acted "honestly and in good faith

when he invested the funds of his ward in the real property" and that if he does so he is not liable as a matter of law to account for the investment. He urges further that where an incompetent person seeks to disaffirm or rescind a contract of her guardian, or his investment of her funds in real property, she can act only through her guardian; "or some person duly authorized to act for and on her behalf, and that when so represented and acting, such legal representative must prove a disaffirmance or a rescission of the contract of investment in accordance with the statutory rules relating to rescission and that the petitioners in the instant case had utterly failed to sustain such burden of proof."

Among what the defendant terms the material issues are the following:

"Has an incompetent ward any legal capacity to appear in county court in proceedings against her guardian?

"Is a final accounting a necessary condition precedent to the ward's right to proceed against her guardian?

"Is a guardian, who honestly and in good faith invests the funds of his ward, liable to the ward for loss resulting from such investment?

"May an incompetent ward repudiate an invetment of her funds in the purchase of real property and require her guardian to repay the principal with interest without a restoration or offer to restore the benefits received?"

The defendant seems to proceed upon the theory that this is an action by the ward against her guardian to recover from him money of hers which he had in his possession, and which he had invested. In this he is wholly mistaken. It is not an action brought by the ward against the guardian to recover money. This is one of the necessary steps required in the matter of the guardianship of the estate of an incompetent. The guardian was required to make a report and at the time of the hearing objection was made to a certain item. The county court found this item should be disallowed. The defendant appealed to the district court. The action of the county court was sustained. The matter is before us on an appeal from the judgment of the district court but the issue is the same.

The question before us is—Has the defendant shown the district court was in error in affirming the action of the county court?

The defendant says the purported action of Judge Thomas of Emmons county was a valid exercise of authority and is therefore binding; that "the order and judgment of probate courts are entitled to the same presumption of jurisdiction as courts of general law and equity powers;" that this attack by the plaintiff is a collateral attack. The burden of proof is upon the guardian to show any necessity for an investment and the authority to invest moneys belonging to his ward. See Campbell v. Costello, 56 N. D. 60, 215 N. W. 913.

When a guardian desires to invest the funds of his ward he can do so only on the order of the county court made pursuant to law. See Shepard v. Hanson, 9 N. D. 249, 253, 83 N. W. 20. The record is silent in these respects. There is nothing in the record to show any application to the county court of Sioux county for leave to invest any funds or to purchase a home for the ward. There is nothing in the record to show that there was any hearing at any time in Sioux county. This "purported order" of Judge Thomas of Emmons county was not filed in the county court of Sioux county until it was attached to and presented with the supplementary report of the guardian. There is no claim that the whole matter involving the guardianship and estate of the incompetent had been transferred to the county court of Emmons county under the provisions of § 8536 of the Code which permits such transference where "the county judge is disqualified to act" in the matter of "a settlement of an estate" and some other matters. It is not necessary to determine whether this case could have been transferred under the provisions of such section. This is an attempt to proceed under the provisions of § 8529 of the Compiled Laws. This statute provides that when the judge of the county court is disqualified to act, such disqualified judge "shall request in writing the county judge of an adjoining county to act in his lieu and stead." That the judge of a county court would be disqualified from passing upon a matter wherein he was selling residence property to one whom he had adjudicated to be an incompetent will not be disputed. However the record is silent as to any written request on the part of Judge Pulling addressed to Judge Thomas of the county court of Emmons county. Judge Thomas does not claim to be acting by "written request." In fact the order he signs is signed by him as "judge of the county court Emmons county, North Dakota, and acting judge of the county court,

Sioux county, North Dakota." This is the only portion of the record before us. There is nothing to indicate any written request on the part of Judge Pulling or any oral request for that matter, hence there is nothing on the face of the order to show the statutory authority required.

It must be observed that the ward was a resident of Sioux county at all times; that it was the county court of Sioux county which made the appointment of the guardian; and that it was to this county court the guardian was required to report. The county court was justified in rejecting this item and refusing to approve the same.

It is the claim of the appellant that the district court lost jurisdiction when it signed the order of June 13, dismissing the appeal.

Where a court acquires jurisdiction of a cause such jurisdiction is retained until the final disposition of the case. 15 C. J. 825. Where a case has been appealed from the county court it is the duty of the district court, after finally determining the matter, to have each order and decision "which dismisses or determines an appeal and each preliminary order which affects the merits" given in writing and "filed with the clerk and by him entered of record, after which the clerk shall attach thereto the original of each paper filed by the parties in the district court, each proper certificate to that court in the original form and certify and transmit the same without delay to the county court there to become part of the record." See § 8624 of the Compiled Laws. Section 8621 specifically requires the decision to set forth the facts found.

Jurisdiction is not devested until this is done. In this case the court made and entered an order dismissing the appeal, but while the case was still in the district court and before the close of the term he made and filed his findings of fact and conclusions of law. No judgment was entered until after the findings of fact and conclusions were filed. It is not necessary for us to determine whether a formal judgment was required after the order of judgment attached to the findings and conclusions filed in July 23, 1927. But the case was still in the district court, the record had not been returned. It was not necessary for the court to "reopen" the case to file findings. The case was not closed until after findings, conclusions, and order had been made and filed. There was no loss of jurisdiction for, as intimated in Holcomb

v. Norman, 43 Ind. App. 506, 508, 87 N. E. 1058, it is not until "after judgment has been rendered in a cause, and the term of the court has closed, the power of the court ceases and it cannot resurrect the cause disposed of for the purpose of performing any further jurisdiction therein," and as shown in Skaar v. Eppeland, 35 N. D. 116, 124, 159 N. W. 707, this time has been extended with us by various statutory enactments.

Section 8620 of the Code says that on such an appeal from the decision of the county court the district court "must hear . . . and determine all questions of law and fact arising thereon according to the mode of trying similar issues originating in that court" and §§ 7638 and 7639 prescribe the mode of rendering decisions when findings of fact are not waived. In this case the findings were not waived. In Crane v. First Nat. Bank, 26 N. D. 268, 144 N. W. 96, this court held that such statutes, represented by these sections "constitute the findings, conclusions and order for judgment the final decision, and require the same to be in writing and filed." The same case says: "It is the filing of signed findings and conclusions and order for judgment that constitutes the final decision which is effective only from the date of filing and which is not made until deposited with the clerk for filing." See also Boyd v. Lemmon, 49 N. D. 64, 72, 189 N. W. 681. The court was within its jurisdiction when it made and entered these findings of fact and conclusions of law. The judgment appealed from is the judgment based upon these findings and conclusions.

The defendant argues the court was in error in requiring the defendant to repay to the estate the amount of money invested in the home. He says "an incompetent while under the guardianship of the defendant cannot proceed against the defendant." The intimation is that it would be necessary for another guardian to be appointed. This view is based upon erroneous conception as to the nature of the case. The county court at the hearing of the report of the guardian had jurisdiction to make and enter an order approving or disapproving the report or any items therein. This it did. So far as the record is concerned the defendant is still the guardian of the ward and in his report of the management of the estate he is required to account for this $3,000 with interest.

The defendant says the court erred in requiring the incompetent to

furnish a quitclaim deed to the premises and argues "that the real property of an incompetent person can be transferred upon the order of the county court granting to the guardian license so to do upon proper petition and upon hearing subject to the confirmation of the court." He says further that the respondent has no standing in the district court and that the defendant "was arbitrarily required to pay $3,000 with interest for a quitclaim deed executed by a person adjudged to be an incompetent of whom he was general guardian. Such a conveyance would make a layman blush with embarrassment. It is indeed, an innovation upon the probate law of this state and as such may well justify an appeal to. this court to test such a novel and unheard-of theory, and the value of such a conveyance. Respondent has no alternative. He must either accept a title which is worthless and unmerchantable, or must appeal for protection to this court." This quotation from the brief shows his conception of the nature of the case. It is not necessary for us to determine whether the quitclaim deed executed by the incompetent is valid or invalid or what is the nature of the estate conveyed thereby. The county court was justified in disapproving the item of expenditure of $3,000 and requiring the defendant to account therefor. The district court was justified in upholding the county court and so the judgment of the district court in approving the action of the county court in the disallowance of this item is sustained with costs to the respondent.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.

## On Petition for Rehearing.

BURR, J. In a petition for rehearing the appellate states this court has failed to "determine some of the vital points presented upon appeal." The first proposition said to be overlooked is that this court did not pass upon the question of whether a guardian "who honestly and in good faith invests the funds of his ward is liable to the ward for loss resulting from such investment." The main opinion expressly refers to defendant's claim that he acted honestly and in good faith. This court held that the only thing which would relieve the guardian

from liability for an investment was a proper order from the county court. Thus while we may not have specifically said that acting in good faith was not a defense it is very clear this feature was not overlooked. Appellant states that good faith is a defense. This court as far back as the case of Shepard v. Hanson, 9 N. D. 249, 83 N. W. 20, held "a guardian, in making contracts relating to the estates of his wards, can bind himself only, and can bind neither his wards personally nor their estates." In the petition for rehearing in that case this court said (p. 253): "The law requires investments to be made in a particular manner, and a guardian in this state may not either. sell his ward's property or make investments of his ward's funds, save on an order of the county court. The office of a guardian is highly fiduciary in its nature and has been made the subject of careful regulation by statutory provision."

Appellants cited us to the case of Re Waite, 190 Iowa, 182, 180 N. W. 159, as supporting the proposition:

"That a guardian making investments without any order authorizing him is not liable for loss, where he acted honestly and exercised a sound discretion."

We find nothing in the case cited which sustains this proposition. We were also cited to the case of Mumford v. Rood, 36 S. D. 80, 153 N. W. 921. This case cited says, at page 923 of 153 N. W.: "Upon the other hand, if his investments are not such as he should have made, he can only protect himself from liability by showing that he was acting in accordance with an order of the court." The same decision goes on to say that the filing of annual reports and their approval by the county court does not absolve the guardian from liability and does not amount to a ratification. The court proceeds on the theory that a guardian who invests property without the authority of the court assumes all responsibility and is "presumed to be doing so when no order has been procured," and that "if a guardian desires protection through any act of the court he must procure an order."

In his petition for rehearing the appellant cites us to the case of Luce v. Jestrab, 12 N. D. 548, 97 N. W. 848, as showing that the contract made is not invalid but merely voidable. The case cited however is dealing with a contract made by a minor, that is by the ward

himself, and is based upon entirely different statutes. We had the question of the good faith of the guardian in mind.

The second proposition advanced is that the court erred in failing to determine whether an incompetent "may repudiate an investment of her funds in the purchase of real property and require her guardian to repay the principal with interest without a restoration or offer to restore the benefits received." We pointed out in the main opinion that the position of the defendant proceeds upon an erroneous theory of the case. This is not an action brought against a former guardian to compel him to repay. It is a matter which arises over an account filed by the guardian. The court disallowed an item—namely the investment of this fund—and required the guardian to account for the money. There is no contention that the ward may compel the guardian to account for the investment and at the same time permit the ward to retain the real property secured. The district court recognized that the method which the appellant must employ in order to recover the real property for himself is not involved in this case. The ward through the new guardian requires her former guardian to account to her for her money. Because he took title to real property in her name, and finds it difficult to get a deed to himself or to get the grantor to take back the land is no reason why he should not account for an unauthorized investment.

The next two propositions are general in their nature and deal largely with the alleged failure to determine the weight of evidence introduced. We need not pass upon this here because we have held that the guardian, to protect himself, must have an order from the court and when he proceeds without an order he does so at his own risk. The record shows conclusively there was no order from the court —the alleged order being a nullity. The appellant, however, argues that the district court erred in requiring him to pay interest on the investment because the new guardian collected rents from this particular property and credited these rents to the estate of the ward. Our statute (§ 8893), requires the guardian to apply the estate of the ward' for her maintenance and where he advances an amount for that purpose not disproportionate to the value of the estate he is entitled to. credit therefor in his settlement (§ 8894), and there is nothing in this decision which precludes him from appearing in the matter of the

estate of his ward and getting credit for any sums which he has expended or which have been obtained from his own investment for her benefit, and use this as an offset to any claim which she has against him for a wrongful investment of her funds. The petition for a rehearing is denied.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.