KELLY, APPELLANT, *v.* KELLY ET AL., RESPONDENTS.

(No. 6,672.)

(Submitted December 15, 1930. Decided February 28, 1931.)

[297 Pac. 470.]

*Mr. F. F. Haynes* and *Mr. P. E. Geagan,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. T. A. Mapes, Mr. G. A. Horkan* and *Mr. I. W. Choate,* for Respondents, submitted a brief; *Mr. Horkan* and *Mr. Choate* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

By an order duly made and entered in the probate court of Ramsey county, Minnesota, on October 28, 1918, plaintiff, a

resident of this state and former wife of defendant J. A. Kelly, hereinafter called defendant, was committed to the State Hospital for the Insane at St. Peter, Minnesota, as an insane person. Thereafter, and on November 8, 1918, defendant filed in the district court of Rosebud county a petition praying that he be appointed guardian of the person and estate of plaintiff. The court, by order, directed that a hearing upon the petition be had on November 18, and on that date an order was made appointing defendant guardian, in accordance with the prayer of his petition. He qualified by taking the oath of office and filing a bond in the sum of $15,000. After appointment defendant took possession of plaintiff's property and in particular a cashier's check on the First National Bank of Forsyth for $17,500. This amount was deposited in the First National Bank of Forsyth, in the name of J. A. Kelly as guardian. Thereafter verified claims were filed with defendant as guardian, against the estate of plaintiff, allowed and approved by the district court. After the payment of all claims against the estate, aggregating $3,062, defendant procured from the same bank a certificate of deposit for $12,000; the balance was carried in a checking account as guardian, to meet current expenses. On August 18, 1919, the certificate of deposit was cashed, $2,000 placed in the checking account to meet current expenses, and a new certificate of deposit procured for $10,000. This practice was followed by defendant until the bank suspended business, at which time $4,500 was carried in a certificate of deposit, and $428.50 in the checking account. Claim was duly filed by defendant with the receiver of the bank and a receiver's certificate for the principal and accrued interest issued and delivered to him.

In February, 1919, defendant was advised by the authorities of the Minnesota Insane Asylum that, due to the fact that the institution was overcrowded and that plaintiff was a nonresident, he would be required to remove his ward. Defendant was advised by the Minnesota authorities that plaintiff was a paranoiac and needed treatment as such. Upon their recom-

mendation, and after investigation, plaintiff was removed to the Milwaukee Sanatorium, a private institution, where she was confined until April, 1921, at a cost of $40 per week, when she was removed to the Riverside Sanatorium at Milwaukee, another private institution which cared for troublesome patients. The cost of maintenance at that place was $45 per week. At the private sanatoriums defendant expended for the care and support of plaintiff the sum of $10,702.35. In 1923 defendant had plaintiff removed to the Montana State Insane Asylum, where she remained until judicially restored to capacity on September 19, 1924.

No inventory of the estate was ever filed by defendant in the guardianship proceedings. On November 18, 1919, he filed his first account as guardian; his second account was filed on February 6, 1924. Neither of these accounts, although properly noticed for hearing, was ever brought to the attention of the court. Following plaintiff's restoration to capacity defendant filed a final account of his guardianship in the district court of Rosebud county. Thereafter proceedings were had in this court wherein the letters of guardianship were held invalid and the district court prohibited from hearing or acting upon such final account. (*State ex rel. Kelly* v. *District Court*, 73 Mont. 84, 235 Pac. 751.)

Plaintiff brought this action against defendant and his bondsman, Fidelity & Deposit Company of Maryland, praying for an accounting from the former for certain money and property belonging to her which, it was alleged, were illegally converted by defendant under the guise and pretense of guardian of the person and estate of plaintiff, and for judgment in the sum of $15,000 upon the official bond which defendant had given as such guardian. Upon the issues joined by answer and reply, the trial court found that defendant had been appointed guardian of the person and estate of plaintiff and that the bond in suit had been given by him in such capacity; that such appointment was illegal and that while defendant was handling plaintiff's money and property he had been a guardian *de*

*facto* at least; that in his capacity of guardian *de facto* defendant had taken possession of $19,747.05 of plaintiff's money (together with certain real estate not involved here); that he had expended as such guardian the sum of $14,692.13, leaving a balance of $6,054.92; that at the time the First National Bank of Forsyth failed and went into the hands of a receiver, defendant had the money of the plaintiff on deposit in that institution—$488.50 on a checking account and the sum of $4,500 in a certificate of deposit—which sums, with accrued interest, were represented by a receiver's certificate, and that defendant was entitled to credit for the sum of $4,988.50, leaving a balance due plaintiff of $66.42. The court further found "that the said bank was a going concern and responsible, and that the said defendant Kelly had no knowledge of anything to the contrary; that the said moneys were properly and safely invested in certificates of deposit bearing interest, all to the benefit of the plaintiff herein; that in each and every of the transactions had herein by the said J. A. Kelly in the capacity as aforesaid, all things were had and done in absolute good faith and for the best interest of said plaintiff, Gina Kelly. And that the said J. A. Kelly * * * acted in good faith at all of the times mentioned herein and in all of his dealings with the person and property of the said Gina Kelly, and that he did believe he was guardian *de jure* of the person and estate of plaintiff herein." Decree awarding plaintiff judgment for $66.42 and costs, was accordingly entered, from which she appeals.

The appeal questions the correctness of the trial court's findings in allowing defendant credit for the sums paid by him for the treatment and maintenance of plaintiff at the Milwaukee and Riverside Sanatoriums; the sum of $1,182.76 expended by defendant during the years 1918 and 1919, and the sum of $4,500, being the amount of the certificate of deposit issued by the First National Bank of Forsyth.

The court's findings that in all of the transactions had and done by defendant he acted in absolute good faith are amply

supported by the evidence; indeed, the evidence establishes beyond peradventure that defendant acted in the utmost good faith, with the sole purpose of conducting her affairs for what he conceived to be for the best interest of plaintiff and her estate. No other conclusion can be reached from the evidence before us. So, also, is the court's finding that defendant was a guardian *de facto* and that he believed he was guardian *de jure* of the person and estate of plaintiff amply supported by the evidence.

"A *de facto* guardian will be held subject to all the duties and liabilities of a guardian" (32 C. J. 696; *In re Cameron's Estate,* 158 Mich. 174, 122 N. W. 564), and his rights will be recognized so far as to entitle him to an equitable order for expenditures which were made for the ward, and which would have been allowed had the guardian been a legal one. (32 C. J. 701; *Alexander* v. *Hillebrand,* 140 Mich. 490, 112 Am. St. Rep. 417, 103 N. W. 849; *In re Beisel's Estate,* 110 Cal. 267, 40 Pac. 961, 42 Pac. 819.) Every guardian must manage the estate of his ward frugally and without waste (sec. 10419, Rev. Codes 1921), and when he has advanced for the necessary maintenance and support of his ward an amount not disproportionate to the value of his estate or his condition of life, and the same is made to appear to the satisfaction of the court or judge, the guardian must be allowed credit therefor in his settlements (sec. 10420, Id.), and a "guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust." (Sec. 10425, Id.) While it is usual and the better practice for a guardian to obtain an order allowing expenditures of his ward's funds, it is not necessary that he do so, but he may take a chance of his accounts being disallowed if any expenditure is made without an order. The court must determine whether the expenditures were reasonable, necessary and proper (sec. 10420, supra), and the burden rests upon the guardian to make such showing. (*Cross* v. *Rubey,* (Mo. App.) 206 S. W. 413.) If the expenditures made by a guardian for the support of his ward were such that they

would have been authorized by the court if application had been made in advance of paying out the money, then they should be allowed in an action or proceeding where the amount due the ward is involved. (32 C. J. 695; *In re Hain's Estate*, 167 Pa. St. 55, 31 Atl. 337; *Spaulding* v. *Bullock*, 20 Pa. Sup. Ct. 301, 206 Pa. St. 224, 55 Atl. 965; *Lake* v. *Hope*, 116 Va. 687, 82 S. E. 738; *May* v. *Skinner*, 149 Mass. 375, 21 N. E. 870; *Hovell* v. *Noll*, 10 Misc. Rep. 546, 31 N. Y. Supp. 439.)

Proceedings of this character are in the nature of an accounting in equity and are to be determined upon equitable principles (4 Bancroft's Probate Practice, p. 2245), and the rights of defendant must be recognized so far as to entitle him to an equitable credit for expenditures which were made for the ward, and which would have been allowed had his appointment as guardian been legal. (28 C. J. 1064.) When a *de facto* guardian acts in good faith and discharges the duties which would have rested upon him if he had been a legal guardian, he is entitled to charge proper expenditures against the funds in his hands. (12 R. C. L. 1112.)

The question then presented for determination is: Are the court's findings supported by the evidence?

Plaintiff's first objection is directed to the credit allowed defendant for payments made to the private sanatoriums for treatment and keep. The only evidence as to the reasonableness of the charges made and the necessity for the expenditure of these amounts is that of defendant, who testified in response to leading questions, that at the time he made the various expenditures he considered and believed that each of them was reasonable, necessary and for the best interest of plaintiff, but the effect of this testimony was materially weakened, if not destroyed, by defendant's subsequent testimony that the charges made by the sanatoriums were for "board and room and in that there was some minor treatment included, they told me, such as probably a cold or sore throat." There is not any evidence of the character of treatment, if any, given plaintiff, that treatment and care of the same character could not

have been had at a lower cost, or that such treatment and care might reasonably be expected to result in an improvement of her condition, or her complete recovery. Those in charge of the private sanatoriums, who knew plaintiff's condition, the nature of the treatments and care given, the necessity therefor, and the reasonableness of the charges made, did not testify and we think the testimony of defendant, standing alone, is insufficient to sustain the court's findings.

While it is true that the district court in the guardianship proceedings could have authorized these expenditures, it would have been justified in doing so, on the testimony before us, only for a reasonable length of time; but in the absence of a clear showing that the treatment and care she was receiving might reasonably be expected to result in plaintiff's complete recovery, it would not have been justified in authorizing such expenditures for an indefinite period. In other words, the court would not have been justified in authorizing the expenditure of the entire corpus of the estate and at the end of a few years leave plaintiff, still insane, penniless and an object of charity or a state charge.

The burden was upon defendant to establish that the expenditures were reasonable, necessary and proper, and since he has failed to sustain the burden we are of the opinion that the findings of the court allowing credit for these items cannot stand.

That the sums allowed by the court were in fact paid by defendant is conceded, and there can be no doubt that he acted in good faith and is entitled to credit for whatever sums may be found to have been reasonable, proper and necessary, but in the condition of the record this court is unable to determine the amount to which he is entitled, and therefore the findings in this regard are set aside, and the district court is directed to hear further testimony on this question.

It is contended by plaintiff that defendant having fixed the domicile of his ward outside the state without permission of the court, contrary to the provisions of section 5880, Revised Codes 1921, he is not entitled to credit for any sum expended

in maintaining her outside the state. The contention is without merit. Defendant's petition for appointment as guardian, filed in the district court, showed that plaintiff was without the state and the verified claim of defendant for expenditures from November, 1918, to March, 1919, presented to and approved by the district judge, shows that plaintiff was being maintained in a hospital outside the state. The court could, and no doubt would, have approved defendant's course in this regard had proper application been made, and under the rule announced, defendant is entitled to credit for such sums as the court may find necessary and reasonable.

Plaintiff urges that defendant was without authority to encroach upon the corpus of the estate. The rule now generally prevailing is that expenditures out of the principal of the estate will be allowed as a credit if they appear to have been necessary and reasonable, and such as the court would have ordered if it had been applied to. (12 R. C. L. 1158; 32 C. J. 706.) The author of an exhaustive note in 5 A. L. R. 619 says: "In a great majority of jurisdictions, while it is recognized as desirable to confine expenditures for the ward's support and maintenance to the income of his estate, there is no hard and fast rule that it must be so confined, in the absence of a statute so providing; the guardian may in a proper case, and without a prior order of court, expend principal for this purpose, and such expenditures will be approved by the court." Our statutes do not limit expenditures that may be made, to the income of an estate. We think upon a proper showing the corpus of an estate may be used, if necessary.

It appears that incompetent persons are kept and maintained at the Montana Insane Asylum at the rate of $1.00 per day, and counsel for plaintiff insist that if defendant is entitled to any credit for her maintenance, it should not be in excess of what she could have been kept for at the Montana Asylum. The contention cannot be sustained. Defendant was not required to maintain plaintiff at the least possible cost, but had a right, and it was his duty, to maintain her in that degree of

comfort which he deemed fitting or to which she had been accustomed and ''not disproportionate to the value of his estate or his condition of life.'' (Sec. 10420, supra.)

Counsel object to the credit of $1,182.76, expenditures made by defendant during 1918 and 1919 and before he received the money belonging to plaintiff. A verified claim was filed by defendant in the guardianship proceedings, showing the purposes for which the money had been expended, the claim was duly allowed and approved by the district judge, and we think the court properly allowed the credit.

Finally it is contended that the court erred in allowing a credit of $4,500, represented by the certificate of deposit issued by the First National Bank of Forsyth, now in receivership. Plaintiff insists that the handling of her funds in the manner indicated amounted to an investment and, since it was made without the approval or ratification of the district court, defendant is not entitled to credit for the amount lost. No question is raised as to the amount carried by defendant in the checking account for current expenses.

The position of a guardian is one of trust and not of agency. (12 R. C. L. 1123.) The relation of a guardian and ward is subject to the provisions of our statute relative to trusts. (Sec. 5882, Rev. Codes 1921.) The funds coming into the hands of a guardian are trust funds which he ''must keep safely.'' (Sec. 5881, Id.)

The court, on the application of a guardian, and after notice, may authorize and require the guardian to invest any ''of his ward's money in his hands in real estate, or in any other manner most to the interest of all concerned therein, and the court or judge may make such other orders, and give such directions, as are needful for the management, investment, and disposition of the estate and effects, as circumstances require.'' (Sec. 10443, Id.) The method adopted by defendant in handling the funds of plaintiff amounted in effect to a loan without security. (*In re Nash,* 159 App. Div. 46, 144 N. Y. Supp. 403; *Fricano* v. *Columbia National Bank,* 118 App. Div. 567, 103

N. Y. Supp. 189; *Garner* v. *Hendry*, 95 Iowa, 44, 63 N. W. 359; *Corcoran* v. *Kostrometinoff*, 164 Fed. 685, 91 C. C. A. 619, 21 L. R. A. (n. s.) 399; *Barney* v. *Saunders*, 16 How. (U. S.) 535, 14 L. Ed. 1047; *Baer's Appeal*, 127 Pa. St. 360, 4 L. R. A. 609, 18 Atl. 1.) While a guardian is not an insurer of the safety of the investments made by him, and a mere error of judgment will not subject a guardian to personal liability for the loss of his ward's funds, if he, without authority of law, invests or loans the money belonging to his ward, he assumes the entire risk. (32 C. J. 694; 13 Cal. Jur. 179; 4 Bancroft, Probate Practice, 2143; *Brave Bull* v. *Ordway*, 57 N. D. 344, 221 N. W. 780; *Guardianship of Cardwell*, 55 Cal. 137; *In re Wood's Estate*, 159 Cal. 466, 36 L. R. A. (n. s.) 252, 114 Pac. 992; *Commonwealth ex rel. Algeo* v. *McConnell*, 226 Pa. St. 244, 44 L. R. A. (n. s.) 889, 75 Atl. 367; *American Bonding Co.* v. *People*, 46 Colo. 394, 104 Pac. 81; *Parker* v. *Wilson*, 98 Ark. 553, 136 S. W. 981; *Zimmerman* v. *Fraley*, 70 Md. 561, 17 Atl. 560; *Coffin* v. *Bramlitt*, 42 Miss. 194, 97 Am. Dec. 449; *Quick's Exrs.* v. *Fisher*, 9 N. J. Eq. 802; *Ricks* v. *Broyles*, 78 Ga. 610, 6 Am. St. Rep. 280, 3 S. E. 772; *Re O'Brien's Estate*, 80 Neb. 125, 113 N. W. 1001; *Mumford* v. *Rood*, 36 S. D. 80, 153 N. W. 921.) And the degree of care which he used in making the loan is immaterial. (*McIntyre* v. *People*, 103 Ill. 142.)

The duty of a guardian in this respect is similar to that of an executor or administrator. The question of the liability of an executor for loss occasioned by reason of loaning the funds of an estate without first having been authorized so to do by the court, was before this court in *In re Connolly's Estate*, 73 Mont. 35, 235 Pac. 408, and it was there correctly held that "an executor or administrator who, without having proceeded regularly, assumes to act upon matters which are required by statute to be done only pursuant to orders of court, is in a position where, if any loss to the estate results, he will be held liable, regardless of his other efforts to protect the estate; whereas, if proceedings are regularly taken to secure the authorization of the court in advance of actual steps being taken, the

extent of the liability is that the representative may show that the loss was not occasioned by his own fault. If this showing is made, he will not be held liable for such loss."

Defendant did not exercise that care in the management of his ward's funds which the law demands by reason of the trust relation he assumed. By securing the consent of the court and acting under its order, he could have invested the funds without risk to himself. This he failed to do, but assumed to act upon his own responsibility. Under such circumstances he must be held to a strict accountability. It follows that the court erred in allowing a credit of the full amount represented by the certificate of deposit; he is entitled to credit only for such sums as have been paid plaintiff in dividends upon the receiver's certificate. If he pays the full amount for which he may be held liable by the district court, he will be entitled to whatever is realized by way of further dividends which may be paid by the receiver of the First National Bank of Forsyth.

This conclusion does not conflict with what was said by this court in *In re Connolly's Estate*, 79 Mont. 445, 257 Pac. 418. In that case the joint executor and executrix had procured a certificate of deposit from a bank of which the executor was cashier. The certificate of deposit, without the knowledge or consent of the executor, came into the exclusive possession of the executrix who later requested the joint executor to transfer the amount represented by the certificate to another bank. She was directed to surrender the certificate and the money would be transferred as requested; this she failed to do and it was properly held that under such circumstances the executor was not liable for loss to the estate resulting from the bank's failure.

The case of *State* v. *Kearns, Admr.*, 79 Mont. 299, 257 Pac. 1002, is clearly distinguishable. There, upon the approval of the administrator's final account he notified the attorney general, advising that the estate was in readiness to be closed and that, so far as known, the deceased left no heirs; that no will had been found; that the money was on deposit in a named

bank, and suggested the propriety of the attorney general instituting escheat proceedings according to law. No action was taken by the attorney general for more than four years; in the meantime and before the order of escheat was entered, the bank failed. This court held that the money had been at all times rightfully held by the administrator of the trust, that the administrator was not obligated to pay the money over to the state prior to adjudication of its escheat to the state, that he exercised reasonable care in the selection of a depositary pending a final conclusion of the administration of the estate and was not liable for the loss to the estate.

By answer defendant requested allowance of reasonable compensation for services as guardian. No finding was made by the court upon this issue. All circumstances considered, we think defendant is entitled to reasonable compensation, and since the case must be remanded for further proceedings, the court should allow defendant reasonable compensation and fix the amount thereof.

Objections raised to other credits allowed defendant are without merit.

For the reasons stated, the cause is remanded to the district court of Rosebud county, with directions to take further testimony respecting the necessity for, and the reasonableness of, the charges made by defendant for the keep and maintenance of plaintiff, and to make appropriate findings thereon and amend the judgment accordingly, fix defendant's compensation, and in other respects to make amendments of the judgment in accordance with the views herein expressed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.

Rehearing denied March 16, 1931.